Jasen, J.
(dissenting). In this proceeding, Israel Ruiz, Jr., challenges the validity of the petition designating Eugene R. McKenna as a candidate for the State Senate, 31st Senatorial District, Bronx County, in the Democratic primary. McKenna obtained 2,570 signatures, of which the Board of Elections invalidated 1514. Since there remained 1,056 valid signatures, satisfying the statutory requirement of 1,000 (Election Law, § 136, subd 6, par [h]), the board validated McKenna’s petition. A referee struck two additional signatures, but sustained the *817 balance, principally upon the ground that McKenna had not committed fraud in the gathering of the signatures. The Supreme Court confirmed the referee’s report and validated the McKenna petition. The Appellate Division, by a divided court, affirmed. The dissenters were of the view that "the petition was so permeated with irregularities as to warrant the invalidation of the entire petition.” I agree and would reverse.
The record reveals that candidate McKenna was dissatisfied at the technique, pace and results of a door-to-door campaign for signatures. He, therefore, decided to solicit the signatures of passersby. A small group of McKenna’s supporters, consisting of himself, his wife, his father, his mother and two of his friends, supervised the solicitation and signed the signature sheets as subscribing witnesses. The candidate personally subscribed 189 of the 198 sheets and, thus, certified that he witnessed 2,495 of the 2,570 signatures submitted. At a hearing, petitioner Ruiz presented witnesses who testified that their signatures had been solicited under false pretenses, that they never saw anyone resembling the subscribing witnesses, that the dates for their signatures could not possibly be correct, and that rudimentary preliminary questions regarding their voter registration and party enrollment were not asked. In fact, the Board of Elections invalidated 945 signatures because the signers were not even registered voters. One woman stated that she was encouraged to sign though she told the solicitors that she was not a resident of Bronx County. McKenna and his own witnesses admitted that several persons were solicited simultaneously, with the understanding that the candidate or his father would "witness” all signatures thus obtained, regardless of whether they personally observed the voter sign the petition. In fact, several of the persons soliciting signatures were ineligible to sign as a subscribing witness.
Based upon review of these undisputed facts, I cannot but conclude that candidate McKenna conducted a signature drive in utter disregard for the requirements of the Election Law. While the courts below have found that he did not act with fraudulent intent, the evidence establishes that he recklessly failed to employ the proper procedures for soliciting and obtaining signatures. As a direct result of his failure to undertake reasonable efforts to protect the quality of his signatures, his petition became permeated with irregularities. *818 Whether his conduct was fraudulent or reckless, the same danger, an unlawful and unauthorized appearance on the primary ballot, is created. For this reason, the petition should be invalidated.
In my view, an entire designating petition should be invalidated where there are sufficient indications of irregularities, improprieties or fraudulent practices to establish a pattern and, therefore, permeation. (See Matter of Mercorella v Benza, 37 NY2d 792.) Although unpatterned irregularities may be overlooked in order to further the broader public interest in favor of a meaningful electoral choice, the appearance of the number of irregularities on this designating petition must lead to the logical and rational inference that the entire petition has not been gathered and prepared in accordance with law. (Cf. Matter of Ippolito v Power, 22 NY2d 594, 597.) Where irregularities are not the product of deceitful intent or fraudulent design, a pattern of irregularities bespeaks either incompetence in execution of methods or indifference to the need for compliance with the requirements of the Election Law. The ultimate danger is that both incompetence and indifference may mask corrupt, if not fraudulent, practices. (22 NY2d, at p 598.) It should be even more obvious that a consistent pattern of surface irregularity is fatal to a claim of substantial compliance. (See, e.g., Matter of Goldstein v Fenton, 202 Misc 435, 436; Matter of Veteran v Tarrytown Citizens’ Party, 13 Misc 2d 664, 667.) Where the undisputed evidence establishes a pattern of willful fraud, or ignorance of the statutory provisions, or inartful and incompetent execution of methods appropriate to achieve compliance with statute, and the pattern permeates an entire petition, it is well within the traditional powers of the court to declare that as a matter of law, in the truest sense of that term of art, the entire petition is invalid.
The method employed by candidate McKenna to obtain the requisite number of signatures on his petition, street-corner solicitation, unless obvious precautions are taken, is apt to produce large numbers of invalid signatures. Petitioner produced many, witnesses who testified to improper methods of solicitation, to the ineligibility of signatories and to the inaccurate recording of dates of signature. The Board of Elections itself invalidated nearly 60% of all signatures submitted for approval. Respondent admitted that the subscribing witnesses, and he was the primary one, by virtue of the practice employed, did not actually obtain or "witness” the signatures subscribed. Although we are bound by the affirmed finding *819 that this conduct was not fraudulent, we are certainly not constrained to say that the end result of this practice, the petition, satisfies the statute as a matter of law. The pattern of massive irregularity established by the undisputed proof, coupled with the manner of signature solicitation, chosen, supervised and participated in by the candidate himself, leads to the conclusion that the entire petition, not just nearly 60% of it, was invalid.
Accordingly, I dissent and vote to reverse.
Judges Gabrielli, Jones, Wachtler and Cooke concur in memorandum; Judge Jasen dissents and votes to reverse in a separate opinion in which Chief Judge Breitel and Judge Fuchsberg concur.
Motion for leave to appeal denied upon the ground that an appeal lies as of right.
Cross motion to dismiss the appeal taken as of right denied.
Order, affirmed, without costs.